Caruthers, J.,
delivered the opinion of the Court.
The bill in this case was filed by the heirs and. distributees of Martha E. Nunn, deceased, against the defendant, as her .husband and administrator, for certain slaves and other property in his possession. The Chancellor sustained their claim, and defendant appealed.
The facts are these: The said Martha E. Thompson married the defendant on the 14th July, 1853, and died on the 29th July, 1854. She was the owner of the slaves, *467 notes, and claims mentioned in the pleadings, in relation to which an ante-nuptial contract was entered into by the parties, on which the complainants rely to exclude the marital right of the husband.
By this deed, all her property is settled upon her for her separate use and enjoyment, and the trustee, John E. Toole, is to pay over to the separate written order of said Elizabeth whatever amount she may require, or make such other investment of the same as she may direct.” In another clause Eli Nunn “relinquishes all claim he has, or ever could have, to three slaves named, and their increase, the • two notes, and cash due from the Chancery Court at Knoxville, the property agreed to be settled upon the said Elizabeth, or the property agreed to be purchased with it, either in law or equity, that he might acquire by marriage, and becoming her husband.” They further agree, in conclusion, that she “may, at any time she desires it, cancel or annul this agreement, upon three months’ notice thereof being given in writing to the said John E. Toole,” the trustee.
If the effect of this deed was only to secure her in the use and enjoyment of a separate estate in her property, the marital right would be only excluded to that extent, and at her death he would, as husband, have a right to the property as against her next of kin. But he expressly “relinquishes all claim he has or could have,” by the marriage, on “ becoming her husband.” This clause excludes him entirely and for ever.
Yet he contends that there are two grounds upon which he can legally claim and hold the property independent of that.
*468 1. She exercised her reserved power to “rescind and annul” the contract. The paper relied upon for that purpose, is this:
“ October 8, 1853.
“Me,, Toole: — If you please, let Mr. Nunn have the papers and notes that you have of mine.
Elizabeth NuNN.”
This was complied with by handing .over the notes, but not the marriage contract; as the trustee says he did not understand it to extend to that, or in aiiy way to operate as a rescission. Certainly it could have no such effect. It did not purport to annul the deed, but evidently only had reference to certain notes and papers for money which she desired her husband to use, perr haps for her benefit.
2. After the death of Mrs. Nunn, and the granting of administration to her husband, he filed a bill for instructions as to the right of property, and setting up his claim to it. There was no other defendant made but the trustee. He filed the deed, and gave his construction of it, against the right of Nunn, but left it to the Court to direct him as to his duty in the premises, having no interest in the matter. The Court in that case, by decree, declared the husband’s right to the property, and put him in possession.
This decree, it is contended, established his right by the judgment of a Court, having jurisdiction, and that the same cannot now be re-examined. One ' object of the present bill, is to impeach that decree, as fraudulent, and assert the rights of complainants to the property as heirs and distributees of Mrs. Nunn. Surely it is not in the way of complainants. They were not parties to *469 it, as- they' certainly should have been. Their rights cannot be affected by it, any more than if it had never been made. It is fraudulent and void-, as to ■ them, and cannot in any way affect their rights.
It appears that a portion of the funds has been invested in certain real estate described in the pleadings. The title to that will inure to the complainants as 'decreed by the Chancellor.
McTeer, who is a party in this suit, has -paid on the purchase of the slaves from Nunn, about' three hundred dollars, and -is bound for $1200 more. That trade will be cancelled, his obligations returned to him, the slave delivered to complainants, and he- will have a decree against Nunn for the $800 dollars and interest. An account of hire since the death of Mrs.' Nunn will be taken, and for such other matters as are stated in the decree below.
The decree is in all things affirmed, and the cause remanded. - . ■